IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

| | |
|---|---|
| DAVID T. As Parent and next friend of Kaitlyn T.,<br>    Plaintiff<br><br>v.<br><br>CITY OF CHICOPEE, Acting through the Chicopee Public Schools, and MASSACHUSETTS DEPARTMENT OF EDUCATION,<br>    Defendants | Case No: 05-30158 |

### MEMORANDUM OF THE DEFENDANT, CITY OF CHICOPEE, ACTING THROUGH THE CHICOPEE PUBLIC SCHOOLS IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter arises out of a Complaint for Judicial Review instituted by Kaitlyn T.[1] and her Parents against the City of Chicopee acting through the Chicopee Public Schools ("Chicopee") and the Massachusetts Department of Education. The Plaintiffs argue that they have been aggrieved by a final decision rendered on June 8, 2005 by hearing officer William Crane ("Mr. Crane") of the Massachusetts Department of Education, Bureau of Special Education Appeals (BSEA) and seek this Court's review of that decision pursuant to 20 USC Chapter 33 §1415(i)(2)(A).

The Plaintiff's filed a motion for summary judgment in January 2006 without complying with U.S. District Court Local Rule 56.1 and submitting their Statement of Undisputed Material Facts. The Plaintiff's Motion for Summary Judgment should, therefore, be dismissed on procedural grounds. This Memorandum will summarize the substantive basis for denial of the Plaintiff's

303532.2

Motion for Summary Judgment and allowance of the Defendant, Chicopee's Motion for Summary Judgment.

I.  THE U.S. DISTRICT COURT MUST RESTRICT ITS JUDICIAL REVIEW TO HEARING OFFICER CRANE'S DECISION.

Throughout their Memorandum in Support of Summary Judgment, the Plaintiffs appear to rely upon an earlier BSEA decision previously rendered by hearing officer Lindsay Byrne ("Ms. Byrne") relative to the student's 2003-2004 Individualized Educational Plan ("IEP") (hereinafter "the 2003-2004 Decision") as though it were binding precedent. The Plaintiffs' reliance upon the 2003-2004 Decision is entirely misplaced. The 2003-2004 Decision was not relevant to Mr. Crane's adjudication of the 2004-2005 IEP, and remains irrelevant in the instant judicial review.

Indeed, the Parents' arguments regarding *stare decisis* and *res judicata* are perplexing in light of Mr. Crane's language expressly stating:

> "Each BSEA decision is decided only on the basis of the evidentiary record and argument for that particular dispute. As I made clear to both parties at the outset of the hearing in the instant dispute, other than those portions of the previous record that have been explicitly entered into the instant dispute,[2] I do not consider the evidentiary record of the previous dispute. . . The previous findings cannot, by themselves, be determinative regarding the appropriateness of Chicopee's currently-proposed IEP." (A.R. Vol. I at 199).

For the reasons set forth below the Parents' *stare decisis* and *res judicata* arguments are wholly inapplicable and therefore must fail.

A.  Mr. Crane's Decision Involved a Distinct IEP That Called for Placement in a New Program, Therefore the Doctrine of Res Judicata is Wholly Inapplicable.

"As the party moving for summary judgment on *res judicata* grounds, the Plaintiff had the burden of establishing elements of either claim or issue preclusion."  See *Beals v. Commercial Union Ins. Co.*, 61 Mass.App.Ct. 189, 194, 808 N.E.2d 824 (2004). The invocation of claim

---

[1] The BSEA has assigned the pseudonym Nelida to the student to protect the privacy of the student in publicly available documents. The pseudonym is used in the decision rendered by the Bureau of Special Education Appeals. In this memorandum, Kaitlyn will be referred to as the "Student".

[2] Selected portions of a transcript of testimony of Daniel Schreier and David Drake were admitted into evidence relative to the 2004-2005 IEP in the interest of judicial economy. (A.R. Vol. I at 197).

preclusion requires "identity of the cause of action." *Kobrin v. Board of Registration in Med.,* 444 Mass. at 843, 832 N.E.2d 628.  The invocation of issue preclusion (also known as 'collateral estoppel') requires that the issue in the prior adjudication was identical to the issue in the current adjudication." *Tuper v. North Adams Ambulance Serv., Inc.,* 428 Mass. 132, 134, 697 N.E.2d 983 (1998).

The Plaintiffs cannot, as a matter of law, establish "identity of the cause of action."  The stipulated issues to be determined by Mr. Crane in the administrative hearing that is the subject of this Complaint for Judicial Review were as follows:

1. Whether the 2004-2005 Individualized Educational Plan (IEP) developed by Chicopee is reasonably calculated to provide a free appropriate public education to [Student] in the least restrictive setting?

2. If not, whether additions or other modifications can be made to the IEP in order to satisfy the standard?

3. If not, whether placement at the White Oak School would satisfy the standard? (A.R. Vol. I at 198).

A review of Mr. Crane's Decision reveals a clear distinction between the IEPs and programs considered by Ms. Byrne relative to the 2003-2004 school year, and those addressed by Mr. Crane for the 2004-2005 school year (*See*, A.R. Vol. I at 199).  Mr. Crane writes: "It is this IEP for the 2004-2005 school year ([Student's] 10th grade year) that is the subject of the instant dispute."  (Id. at 199).  He describes each IEP as "unique, reflecting the services and placement that Chicopee believes to be appropriate for [Student] for the particular period of time covered by the IEP".  (Id. at 199).  Mr. Crane expressly states that: "The IEP that was the subject of the previous hearing [2003-2004 Decision] is not before me, and neither party has requested that it be admitted into the record of the instant dispute."  (Id. at 199).

Nor can the Plaintiffs establish that the program at issue in the prior adjudication was identical to that before Mr. Crane.  Mr. Crane made clear that he was considering a separate and

distinct program from the one considered in the 2003-2004 Decision. Mr. Crane distinguished the 2003-2004 program considered by Ms. Byrne, with that of the 2004-2005 program by describing the 9th grade (2003-2004) instructional model as an "inclusion" program with academic courses provided within mainstream 9th grade classes, and modifications by a special education teacher, and characterizing Chicopee's newly developed Brighter Beginnings Program for 2004-2005 as "substantially separate" for learning disabled students. (A.R. Vol. I at 225).

In *Kobrin v. Board of Registration in Medicine*, the Supreme Judicial Court addressed the issue of whether claim preclusion and issue preclusion applied in a case where the Board of Registration in Medicine ("Board") revoked a doctor's license to practice medicine. 444 Mass. 837, 832 N.E.2d 628 (Mass. 2005). The doctor claimed, among other things, that the Board could not proceed against him because of an earlier decision rendered by the Board. The Court noted that the sole basis for the current disciplinary action was the doctor's two criminal convictions for Medicaid fraud, which occurred two years after the Board issued its prior decision concerning substandard care of his patients. "Thus, it is clear that the Board could not previously have litigated this issue or disciplined the petitioner as the convictions had not yet occurred." (*Id.*) So, too, here. The Brighter Beginnings Program was not even in place for the 2003-2004 school year. Accordingly, the school district could not have previously litigated the issue of whether it was an appropriate placement.

Thus, the Parents cannot, as a matter of law, establish the requisite elements of either claim or issue preclusion, therefore their *res judicata* argument must fail.

B.  Even Were Mr. Crane Bound By The 2003-2004 Decision—and He Is Not—He Did Not Ignore the Byrne Decision

The Plaintiffs complain that Mr. Crane, in his decision, "ignored" the 2003-2004 decision. This is baffling in view of the following language in Mr. Crane's decision:

> "Each BSEA decision is decided only on the basis of the evidentiary record and argument for that particular dispute. As I made clear to both parties at the outset of the hearing in the instant dispute, other than those portions of the previous record that have been explicitly

> entered into the instant dispute, I do not consider the evidentiary record of the previous dispute..."
> (A.R. Vol. I at 198).

More specifically, the Plaintiffs complain that Mr. Crane "ignored the previous case which factually found READ 180 not to be a proven methodology with scientific or research basis for remediating language based learning disabilities." (Pls.' Mem. Supp. Summ. J. 16.)  In point of fact, however, Ms. Byrne never addressed the research studies conducted to establish the efficacy of Read 180 and whether it was a "proven methodology". [3]  At the outset, it is important to note Ms. Byrne's actual finding regarding READ 180.  Ms. Byrne found as follows:

> The evidence in this hearing established that READ 180 is a new, exciting, engaging computer assisted tool for developing reading fluency in disadvantages students attending large public school systems.  There is no evidence, however, that it is a targeted, rule-based, phonetic system designed to remediate individual reading disabilities.  (A.R. Vol. I at 220).

Moreover, as the Plaintiffs recognize in their Memorandum of Law, Mr. Crane specifically adopted Ms. Byrne's finding regarding the READ 180 program, stating "I have insufficient reason to depart from this finding, and therefore I adopt it."  (A.R. Vol. I at 220; Pls.' Mem. Supp. Summ. J. 9).  In adopting this finding, Mr. Crane went on to distinguish between the general issue of whether READ 180 is "designed to remediate individual reading disabilities" with the specific issue of the "appropriateness of READ 180 as implemented within the Brighter Beginnings program for [Student]."  (A.R. Vol. I at 220, 222).  The Plaintiffs brush aside this important distinction and attempt to obfuscate the issue by characterizing Mr. Crane's decision as a reversal of the 2003-2004

---

[3]  The Plaintiffs, in their Memorandum of Law, also assert that "the best evidence of what constitutes a proven methodology comes in the form of the new federal laws and the regulations that were put into force and effect weeks after the decision was rendered...." IDEA 2004 went into effect on July 1, 2005; the U.S. Department of Education, Office of Special Education and Rehabilitative Services (OSERS) released the proposed regulations for the IDEA 2004 on June 21, 2005.  See Proposed Regulations for IDEA 2004, 70 Fed. Reg. 35,782 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300).  The parties appeared before Mr. Crane in early May and his decision was rendered in early June. (A.R. Vol. I at 196).  It is nonsensical to argue that new laws that were not in effect and new regulations that were not even published at the time of the hearing could have any possible relevance to the Mr. Crane's decision.  Therefore, any discussion in the Plaintiffs' Memorandum of Law concerning "scientific research based intervention" is irrelevant.

Decision.[4] Were this the case—and it is not—under Massachusetts law, stare decisis does not mean that an agency may never deviate from its original position, only that any such change must be explained. *See, e.g.*, *MCI WorldCom Communications, Inc. v. Department of Telecommunications and Energy,* 810 N.E.2d 802 (Mass. 2004). Moreover, for the reasons set forth in Section II. below, Mr. Crane's decision is well-reasoned and fully supported.

Accordingly, the Plaintiffs' attempts to rely on the 2003-2004 Decision on the grounds of *res judicata* and *stare decisis* fail as a matter of law and this Court must restrict its judicial review to Mr. Crane's decision.

II. HEARING OFFICER CRANE'S DECISION WAS NOT ARBITRARY OR CAPRICIOUS BUT, RATHER, WAS CONSISTENT WITH THE EVIDENCE AND THE APPLICABLE LAW.

The district court's review under the IDEA has been described as "one of involved oversight." *Lenn,* 998 F.2d at 1087 (citing *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 989 (1st Cir.1990)). The applicable standard is an intermediate one under which the district court must exercise independent judgment, but, at the same time, accord "due weight" to the administrative proceedings. *See Rowley,* 458 U.S. at 206, 102 S.Ct. 3034; *Lenn*, 998 F.2d at 1086-87. The exact degree of "due weight" is left to the court's discretion, however, any deviation from the administrative findings should be explained. *See Lenn,* 998 F.2d at 1087.

As the "trier-of-fact", Mr. Crane assessed all testimonial and documentary evidence during three days of hearing, and determined that Chicopee had met its burden of proof in establishing that the 2004-2005 IEP for the Student was reasonably calculated to provide her with an education that is consistent with the current Massachusetts legal standard of free appropriate public education

---

[4] The cases cited by the Plaintiffs in support of this contention are inapposite in that they deal with agencies in the regulatory and rulemaking contexts rather than in the adjudicatory context, as is the case here. In addition, both cases hold the doctrine of *stare decisis* inapplicable. *See, e.g.*, *York Transport Co. v. Railroad Com of Texas*, 315 SW2d 313 (Tex. Civ App. Ct. 1958) (holding that where new and substantial evidence was heard by the Railroad Commission as to commodities included within term "petroleum products," prior action could not be given effect of res judicata, nor were doctrines of stare decisis and equitable estoppel applicable).

(FAPE). (A.R. Vol. I at 213-225). He found that the 2004-2005 IEP was "tailored to address [the Student's] unique needs in a way reasonably calculated to enable her to make meaningful and effective educational progress in the least restrictive environment". (A.R. Vol. I at 213-225). Mr. Crane applied the standard enunciated by the First Circuit Court of Appeals in *T.B. v. Warrick School Committee*, 361 F. 3d 80, 82(n)(1) (1st Cir. 2004) (A.R. Vol. I at 214n.20) and painstakingly addressed each issue raised by the Parents and their expert relative to the 2004-2005 IEP. (Id. at 213-225). Mr. Crane was also guided by state special education regulations governing the development of IEPs. (A.R. Vol. I at 213n.18).

> A. <u>Mr. Crane Found that Chicopee's IEP for the Student was Designed to Enable her to Progress Effectively in the Content Areas of the General Curriculum.</u>

Once a student has been found eligible for special education services, her TEAM, including regular and special education personnel and evaluators, meet to develop an IEP and determine placement. (603 CMR 28.04, 28.05). In developing the IEP, the TEAM:

> ". . . shall carefully consider the general curriculum, the learning standards of the Massachusetts frameworks, the curriculum of the district, and shall include specially designed instruction or related services in the IEP designed to enable the student to progress effectively in the content areas of the general curriculum." (603 CMR 28.05(4)(b)).

To make effective progress in the general education program means to make documented growth in the acquisition of knowledge and skills according to a student's age, development and potential. (603 CMR 28.02).

Mr. Crane made factual findings relative to Chicopee's compliance with its obligations pursuant to 603 CMR 28.02, 28.04 and 28.05. He fully credited the testimony of Chicopee's expert neuropsychologist, Dr. Judith Souweine, ("Dr. Souweine") who testified that she had observed approximately 100 programs for students with similar language-based learning disabilities to that of the Student in this case. Dr. Souweine had also reviewed all of the Student's evaluations and

educational records, observed the Student at the White Oak School, and observed Chicopee's Brighter Beginnings Program proposed for Student in the 2004-2005 IEP. (A.R. Vol. I at 209, 216). Dr. Souweine testified that the Student had a moderate language-based learning disability which could appropriately be addressed through the Brighter Beginnings Program (A.R. Vol. I at 209-212, 216).

Mr. Crane also credited the testimony of Dr. Souweine indicating that the Brighter Beginnings Program allowed special education students to participate in regular education activities and access the full curriculum. Dr. Souweine found that the services proposed for the Student within Chicopee's IEP "would provide [the Student] with an appropriate and comprehensive program that would address each of her particular special education needs. She further opined that the proposed services and program would 'likely result in substantial' progress regarding her special education needs." (A.R. Vol. I at 211-212 par. 66 and 68). Dr. Souweine defined "substantial" progress as permitting the Student to acquire "the skills necessary to be successful in high school". (A.R. Vol. I at 212 par. 68). Dr. Souweine further explained that the Student "would likely be able to be mainstreamed into regular education classes at Chicopee High School as her skill level increases". (Id).

Further, Mr. Crane found Dr. Souweine's understanding of the Brighter Beginnings Program to be more detailed and complete than that of the Parents' expert, Dr. Kemper. Dr. Souweine had observed the program for a longer time period and had substantive discussions with the teachers, the special education supervisor, and the consultant to the program. Dr. Souweine's superior knowledge of the program permitted Mr. Crane to more fully credit her testimony than that of Dr. Kemper. (A.R. Vol. I at 215 & 216). Mr. Crane also noted Dr. Souweine's observations that the Brighter Beginnings Program was in substantial conformance with Dr. Kemper's previously stated recommendations for the Student, including a low student/teacher ratio, systematic and sequentially

paced teaching, review of previously learned material, the teaching of skills in a variety of settings to promote generalization, and the appropriate training of teachers.  (A.R. Vol. I at 212, 216-219).

Mr. Crane also made specific findings of credibility with respect to the three Brighter Beginnings Program teachers, William Mattavi, Terry Shotland, and Jeffrey Kimball who previously taught the Student at the White Oak School.  (A.R. Vol. I at 205-207).  Mr. Crane noted the strategies and methodologies implemented by the teachers in the Brighter Beginnings Program and the consistency between the teaching techniques used at White Oak and Brighter Beginnings, including: the teaching of specific skills, the use of organizational tools, consistency in classroom routines and teaching methods.  (A.R. Vol. I at 205-206).

Based on the fully credited testimony of Dr. Souweine and the Brighter Beginnings teachers, Mr. Crane found that the district's 2004-2005 IEP for the Student did include specially designed instruction to meet the Student's individual needs, to allow the student access to the general curriculum, and to progress effectively in the content areas of the general curriculum consistent with state regulations. (A.R. Vol. I at 225; See 603 CMR 28.05(4)).

    B.    <u>Mr. Crane Made Detailed Factual Findings, Supported by the Evidence, Relative to Each Issue Raised by the Plaintiffs.</u>

Mr. Crane framed the disputed issues between the parties as follows:

1. Whether Chicopee's Brighter Beginnings Program was in fact a language-based, substantially separate program?

2. Whether the READ 180 Program was appropriate for the Student?

3. Whether the make-up of the student population in the Brighter Beginnings Program was appropriate for the Student?

4. Whether the Student required a separate class in oral expression?

5. Whether the Brighter Beginnings Program had adequate consultation from learning disabilities experts and speech and language pathologists?

The hearing officer found the Brighter Beginnings Program to be substantially separate and language-based as those terms are commonly understood within special education programming and agreed upon by Dr. Souweine and Dr. Kemper. Specifically, he noted the individualized, multi-sensory, sequential, and repetitive nature of the instruction which teaches "skills in a variety of contexts to promote generalization". (A.R. Vol. I at 217-220).

Mr. Crane credited the testimony of Dr. Souweine, Chicopee's special education supervisor, Dr. Stolar, and the Brighter Beginnings Program teachers, William Mattavi, Terry Shotland and Jeffrey Kimball relative to the profiles of the members of the student population of the Brighter Beginnings Program. All have the common diagnosis of "learning disabled", as opposed to emotionally/behaviorally impaired. (A.R. Vol. I at 217). He found irrelevant the fact that one or more of the students participated in courses within the mainstream high school. Id. at 217.

The Parents' expert Dr. Kemper and Chicopee's expert, Dr. Souweine agreed on the recommended elements a language-based program for the Student which Mr. Crane found present in the classes taught by Mr. Mattavi, Mr. Shotland and Mr. Kimball. (A.R. Vol. I at 217, 218). Mr. Crane buttressed his ultimate opinion about the language based nature of the Brighter Beginnings Program with very specific findings relative to the teaching approaches implemented in the program. (See A.R. Vol. I at 205-207). The testimony of the individual Brighter Beginnings teachers was corroborated by Dr. Souweine's in-person observations of the program. (A.R. Vol. I at 209-212). Mr. Crane expressly discredited the testimony of the Parents' expert Dr. Kemper due to his limited observation of the Brighter Beginnings Program and the rebuttal of Dr. Kemper's testimony by Chicopee's witnesses. (A.R. Vol. I at 218-219).

Relative to the appropriateness of the READ 180 Program used by the Brighter Beginnings Program, Mr. Crane noted the broad discretion accorded to school districts in choosing instructional methodologies, as long as the methodology chosen is likely to provide the student with a free

appropriate public education. (A.R. Vol. I at 219). After evaluating the extensive documentary and testimonial evidence presented on READ 180, once again, Mr. Crane credited the testimony of Dr. Souweine and the Brighter Beginnings teachers and concluded that READ 180 "would likely provide remediation for [Student's] individual reading deficits". (A.R. Vol. I at 220). He discounted the testimony of witnesses who had never actually used the reading program or received formal training in the program. Id. at 220. Mr. Crane found particularly persuasive the testimony of the two Brighter Beginnings teachers who, not only had extensive experience using READ 180, but also were familiar with the Student, whom they had taught at White Oak School. (A.R. Vol. I at 221-222).

Regarding the appropriateness of the student grouping, Mr. Crane analyzed copies of redacted IEPs of the other students in the Program and the testimony of the Brighter Beginnings staff. (A.R. Vol. I at 222-223). He found the students to all have a primary learning disability as opposed to an emotional or behavioral disability which may potentially cause disruption to the program. (Id. at 223). He also credited the testimony of Chicopee's special education supervisor, Dr. Stolar, regarding the development of the Program and her frequent observation and monitoring of the Program. (A.R. Vol. I at 207 & 222).

The Parents argued that the Student required a separate class in oral expression in order to be provided with an appropriate education. Chicopee testified that oral expression is integrated throughout the Brighter Beginnings Program rather than taught as a separate class. (A.R. Vol. I at 207). Mr. Crane credited the testimony of Chicopee supervisor, Dr. Stolar who stated that, for high school students, she finds infusion of oral expression throughout the curriculum to be more effective than the teaching of a separate oral expression class. (Id. at 223). Mr. Crane agreed that oral expression could be taught as an integrated part of the program and noted that the IEP could be modified accordingly. (A.R. Vol. I at 224).

Finally, Mr. Crane concluded that the Chicopee program had adequate intra-program consultation and outside consulting from a learning disabilities expert by the name of Susan Fino. (A.R. Vol. I at 224). In addition to meeting for 45-90 minutes a week, the teachers readily accessed the services of Dr. Stolar to ensure the continuity and consistency of the instruction and the infusion of language-based strategies throughout the program. (A.R. Vol. I at 205, 206, 207, 210, 224).

## CONCLUSION

The Plaintiffs' Motion for Summary Judgment should be denied on both procedural and substantive grounds. Procedurally, the Plaintiffs failed to submit "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, . . ." in compliance with the Local Rules. U.S. District Court L.R. 56.1.

Substantively, the Plaintiffs' Motion for Summary Judgment should be denied and the Defendant's Motion for Summary Judgment should be allowed because Bureau of Special Education Appeals hearing officer William Crane's underlying decision was not arbitrary or capricious but consistent with the evidence and applicable law. Mr. Crane made highly detailed factual findings relative to each of the conclusions that he reached regarding Chicopee's 2004-2005 IEP for the Student. Mr. Crane's findings are also consistent with state special education regulations set forth at 603 CMR 28.00 et. seq.. Mr. Crane credited the testimony of Chicopee's teachers, administrators, and experts relative to the elements of the Brighter Beginnings Program and the services proposed for the Student in the 2004-2005 IEP. Quite simply, Mr. Crane concluded that Chicopee had succeeded in designing an appropriate secondary language-based learning disabilities program for the Student and delineating specifically designed instruction tailored to meet the Student's needs in the 2004-2005 IEP.

Finally, the Plaintiffs' assertions regarding the doctrines of *stare decisis* and *res judicata* are entirely misplaced and inapplicable to this case. The 2003-2004 decision rendered by a prior hearing officer bears no relevance to Mr. Crane's adjudication of the 2004-2005 IEP, and is entirely irrelevant to this Court's entry of summary judgment.

FOR DEFENDANT,
CITY OF CHICOPEE ACTING
THROUGH THE CHICOPEE PUBLIC
SCHOOLS


By    */s/ Claire L. Thompson*
_____
Claire L. Thompson, Esq.
Doherty, Wallace, Pillsbury
 & Murphy, P.C.
One Monarch Place
1414 Main Street, 19th Floor
Springfield, MA  01144
Phone:  (413) 733-3111
Fax:    (413) 734-3910
B.B.O. No:  550262