IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

| | |
|---|---|
| DAVID T. As Parent and next friend of Kaitlyn T.,<br>    Plaintiff<br><br>v.<br><br>CITY OF CHICOPEE, Acting through the Chicopee Public Schools, and MASSACHUSETTS DEPARTMENT OF EDUCATION,<br>    Defendants | Case No: 05-30158 |

**DEFENDANT, CITY OF CHICOPEE'S, MOTION TO STRIKE AND FOR SANCTIONS**

    Now comes the City of Chicopee acting through the Chicopee Public Schools ("Chicopee") and respectfully requests that this Honorable Court strike from the official record of this case the Parents' Memorandum in Opposition to Chicopee's Motion for Preliminary Injunction and attached exhibit consisting of Parents' Motion to Enforce Stay-put Provision filed with the Bureau of Special Education Appeals. The striking of the parents' memorandum and issuance of sanctions are appropriate in this case because counsel for the parent has violated the rules and procedures of the Massachusetts Department of Education, Bureau of Special Education Appeals ("BSEA") for its Advisory Opinion Process. Specifically, counsel violated the confidentiality requirement of the Advisory Opinion Process in a transparent attempt to gain an unfair and improper advantage with the federal court relative to Chicopee's Motion for a Preliminary Injunction.

    Without reiterating the very lengthy history between the parties, Chicopee will summarize the relevant procedural history. The parties participated in a hearing before the Bureau of Special Education Appeals (hearing officer William Crane presiding) in the spring of 2005 relative to the

310873.1

appropriateness of Chicopee's 2004-2005 IEP, calling for the student's placement in the Brighter Beginnings Program at Chicopee High School. On June 8, 2005, hearing officer Crane rendered a decision in favor of Chicopee. The parents subsequently filed a Complaint for Judicial Review seeking to have this Court overturn Mr. Crane's decision. The parents have also argued to the BSEA that Chicopee is obligated to fund the parents' unilateral placement of the student at the White Oak School for the 2005-2006 school year, pending the outcome of their appeal. Chicopee has not funded that placement, given a lack of binding precedent and factually analogous case law in the First Circuit. It is well settled, however, that a motion for preliminary injunction is the proper procedure for determining which party will bear the interim cost for maintaining a private placement. *See, Doe v. Brookline*, 722 F.2d 910, 916-17 (1st Cir. 1983).

The parents filed a hearing request for an Advisory Opinion Process with the Bureau of Special Education Appeals seeking a nonbinding opinion regarding this funding issue. Chicopee participated in the process in good faith and made a fair and reasonable settlement offer. The Advisory Opinion Process was presided over by hearing officer Raymond Oliver on March 22, 2006. Prior to oral argument, Mr. Oliver had both counsel sign an agreement memorializing the rules and procedures of the Process, as well as, counsels' agreement not to disclose the hearing officer's opinions or any information exchanged during the Advisory Opinion Process in any other legal proceeding. See Exhibit A. Advisory Opinion Process procedure (d) states:

> "Information exchanged during the Advisory Opinion Process shall not be used for impeachment of witnesses or any subsequent hearings or proceedings associated with the case. All hearing officer advisory opinions shall be confidential and shall not be disclosed to the public or at any further hearings or proceedings associated with the case; . . .".

Likewise, Advisory Opinion procedure (k) reiterates the obligation of the parties to participate in good faith, as follows:

> "Any party who does not participate in the process in good faith or who otherwise fails to abide by the rules governing this process shall be subject to such sanctions as determined appropriate by the hearing officer." See Exhibit A.

Chicopee filed a Motion for Preliminary Injunction with this Court on April 26, 2006. Chicopee seeks through its motion to have this Court exercise its injunctive relief authority by determining which party will bear the interim costs for maintaining the 2005-2006 unilateral private placement. Chicopee expected to have a fair opportunity to argue the facts and the law on this novel issue. Chicopee has been deprived of its fundamental right to fairness by the parents' attempt to submit two memoranda which clearly breach their confidentiality agreement in the BSEA's Advisory Opinion Process and may prejudice this Court's ruling on Chicopee's motion. Those memoranda should be stricken from the record.

There is no doubt that counsel for the parent violated both the express rules and procedures for participation in the Advisory Opinion Process, as well as the spirit of that process. He attempted to use the "information exchanged during the Advisory Opinion Process . . . at a subsequent hearing or proceeding associated with the case" by submitting to this Court a copy of the brief which he submitted to the hearing officer in the Advisory Opinion Process and, more troubling, revealing the hearing officer's confidential recommendation. Sanctions should be imposed where, as in this case, the parents and their counsel did not participate in the Advisory Opinion Process "in good faith" and failed to "abide by the rules governing this process". See, Advisory Opinion Process procedure (k).

To add insult to injury, counsel for the parent "cut and pasted" or otherwise copied and submitted to this Court several pages of the text from an argument made by counsel for Chicopee relative to a motion for preliminary injunction in the unrelated case of U.S. District Court Docket No: CV-30192-MAP, document 4-1 filed 8/19/2003.[1]  Attached hereto as Exhibit B is a copy of pages 6 – 10 and 15 – 18 of the memorandum prepared by counsel for Chicopee in opposing a motion for preliminary injunction in docket no. CV-30192-MAP. Counsel for the parent copied this argument without the permission of counsel for Chicopee.

---

[1] Counsel for the parent did acknowledge in a footnote his very liberal copying of opposing counsel's work product.

310873.1                                3

  Attorney Beaulieu's conduct in violating the confidentiality provisions of the Advisory Opinion Process and use of opposing counsel's work product without permission is reprehensible. Chicopee has been prejudiced by this conduct which should be sanctioned by striking the parents' opposition, by allowance of Chicopee's Motion for Preliminary Injunction, and by an award of attorney's fees for monies expended by Chicopee in the preparation of this Motion to Strike and for Sanctions.

  WHEREFORE, Chicopee respectfully requests issuance of the aforementioned relief.

FOR DEFENDANT,
CITY OF CHICOPEE ACTING
THROUGH THE CHICOPEE PUBLIC
SCHOOLS

 */s/ Claire L. Thompson*
By _____
 Claire L. Thompson, Esq.
 Doherty, Wallace, Pillsbury
  & Murphy, P.C.
 1414 Main Street, 19th Floor
 Springfield, MA  01144
 Phone:  (413) 733-3111
 Fax:    (413) 734-3910
 B.B.O. No:  550262

Dated: May 12, 2006

## CERTIFICATE OF SERVICE

 I certify that this document has been served upon all counsel of record in compliance with F.R.C.P. on May 12, 2006.

          */s/Claire L. Thompson*
          Claire L. Thompson





# The Commonwealth of Massachusetts
# Department of Education

350 Main Street, Malden, Massachusetts 02148-5023

Agreement to Participate in a
Special Education Appeals
Advisory Opinion Process

BSEA Number: 06-3347

6/97

By signing this document, I agree to the following conditions of the Advisory Opinion Process:

a. The parent(s) and the school district shall each be allocated a total of one (1) hour to present their respective case;

b. The witnesses' testimony shall not be under oath;

c. The proceedings shall not be recorded;

d. Information exchanged during the Advisory Opinion Process shall not be used for impeachment of witnesses at any further hearings or proceedings associated with the case. All Hearing Officer Advisory Opinions shall be confidential and shall not be disclosed to the public or at any further hearings or proceedings associated with the case;

e. The Hearing Officer shall be allowed to ask questions at any time during the proceeding. Any time used by a witness or party to respond to a Hearing Officer question shall not be used to extend the party's allocated 45 minute presentation time;

f. In addition to parents, special education directors, and a designated attorney or advocate, each party shall be limited in attendance to a total of three (3) additional individuals who may attend or participate in the process;

g. The party requesting a change in the educational services shall be designated as the first party;

h. The presentations shall be conducted as follows:

1. The first party shall be initially allocated 45 minutes to present its case;
2. The first party shall present no more than 2 witnesses of its own choosing. Neither party shall be allowed to ask the witnesses questions during this period of time;
3. The second party shall then be allocated 45 minutes to present its case;
4. The second party shall present no more than 2 witnesses of its own choosing. Neither party shall be allowed to ask the witnesses questions during this period of time;
5. For the next 15 minutes, the first party may elaborate on any parts of its case or ask questions of any witness;
6. For the final 15 minutes, the second party may elaborate on any parts of its case or ask questions of any witness.

i. The Hearing Officer shall render a brief (i.e., one to three sentence) written advisory opinion within one half hour of the close of the presentations;

j. Unless the Hearing Officer determines otherwise, there shall be no adjournments once the proceeding has commenced; and

k. Any party who does not participate in the process in good faith or who otherwise fails to abide by the rules governing this process shall be subject to such sanctions as determined appropriate by the Hearing Officer.

_____  3/22/06
Signature                  Date

DEREK M BEAULIEU
Please Print Name


_____  3/22/06
Signature                  Date

CLAIRE L. THOMPSON
Please Print Name

Case 3:05-cv-30158-MAP   Document 47-3   Filed 05/12/2006   Page 1 of 9
Case 3:03-cv-30192-MAP   Document 4-1   Filed 08/19/2003   Page 6

EXHIBIT
B

Administrator of Student Support Services for the Ludlow Public Schools, Dr. Kane has certified that the goals, objectives and services in Exhibit C are those recommended by the TEAM. She further certified that all of the services and accommodations in Exhibit C will be provided to Larissa within the Focus Program beginning September 2, 2003, pending any potential decision to be rendered by a hearing officer of the Bureau of Special Education Appeals. See Exhibit A.

## LAW AND ARGUMENT

I. <u>This Motion Should Be Denied Because The Plaintiff Has Failed To Exhaust All Administrative Remedies To Resolve The Disputed Issues.</u>

A party seeking relief under the Individuals with Disabilities Education Act ("IDEA") ordinarily must exhaust administrative remedies before the BSEA before filing suit in federal court. See, Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993). The BSEA has jurisdiction to adjudicate disputes arising pursuant to the IDEA, 20 U.S.C. §1401 et. seq., including the "stay-put" provision of §1415 (j). Attached as Exhibit E is a copy of a portion of the BSEA Hearing Rules published by the Massachusetts Department of Education. Page one of the BSEA Rules addresses the scope of the Bureau's jurisdiction expressly including disputes under 20 U.S.C. §1401 et. seq. See Exhibit E. Rule 2A on page 3 provides for the scheduling of a hearing within 20 days of receipt of a Hearing Request. See Exhibit E. Pursuant to Rule 2B, a parent may obtain an Expedited Hearing within 10 days of receipt of the Request. See Exhibit E.

Accordingly, it is Ludlow's position that Mrs., K. had a legal obligation to request a hearing before the BSEA and have a BSEA hearing officer adjudicate the issue of "stay-put" under §1415 (j) prior to filing suit in federal court. In the event that the parent disagrees with a ruling of the BSEA, she would then be free to appeal that ruling to state or federal court.

"[U]nder certain circumstances exhaustion of administrative remedies is not required before district court action may be taken... Traditionally, such cases have been limited to

situations where the school has denied the plaintiff access to the administrative remedies." Christopher W. v. Portsmouth School Committee, 877 F.2d 1089 (1st Cir. 1989). *See e.g.*, Manecke v. School Board of Pinellas County, Florida, 762 F.2d 912, 918 (11th Cir. 1985), *cert. denied*, 474 U.S. 1062 (1986) (School board denied Plaintiff access to judicial and administrative mechanisms when due process hearing requested.); Mrs. W. v. Tirozzi, 832 F.2d 748, 759 (2d Cir. 1987) (Defendants refused to consider and resolve complaints of system-wide violations.); Honig v. Doe, 484 U.S. 305 (1988) (Student denied all access to education when suspended indefinitely.). Henry v. School Administrative Unit No. 29, 70 F. Supp.2d 52, 60 (N.H. 1999) (Administrative hearing officer refused to address "stay put" determination until after federal action filed.). It is undisputed that Ludlow has never denied the parent in this case access to a due process hearing or refused to participate in a hearing.

The policy behind the exhaustion of administrative remedies was set out in Christopher W. v. Portsmouth School Committee, a case dealing with the IDEA's predecessor in name only, the Education for all Handicapped Children Act ("EHA"), as follows:

> The exhaustion of administrative remedies doctrine has long been held to mean that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. This doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy. *(citations omitted)* 877 F.2d 1089, 1094-95 (1st Cir. 1989).

Courts do not apply the exhaustion doctrine "inflexibly." Christopher W., 877 F.2d at 1094. As a consequence, exceptions to the exhaustion doctrine have developed, "e.g., when the

issue is *a pure matter of law*, or when exhaustion *will work severe harm upon the litigant*, or when future agency proceedings may be *futile*, only delaying an ultimate resolution and that the legislative history of the Act reflects understanding that exhaustion is not a rigid requirement." Id. at 1095. An analysis of the exhaustion doctrine and its exceptions under the facts of the case at bar, demonstrate that the plaintiff has neither exhausted the available administrative remedies nor shown the applicability of an exception.

As noted earlier, as of the time of the Plaintiff's filing of the federal Complaint, Plaintiff had not notified Ludlow of any request for an administrative hearing to develop a factual record and resolve the "stay put" question at issue. The mechanism for requesting a hearing and resolving the "stay put" question is available "through the carefully tailored administrative and judicial mechanism set out in the statute." Id. at 1094. See Exhibit E. Such a hearing would have been, and is still, available to the Plaintiff to resolve the question at issue. Clearly, the Plaintiff has not exhausted available administrative remedies. To avoid preclusion of the injunction on an exhaustion basis, therefore, the Plaintiff must demonstrate qualification under an exception.

**(1) Is the issue "a pure matter of law?"**

The "stay put" question presented is not a pure matter of law and is instead dependent on the determination of several factual matters. Plaintiff's prior placement is unavailable and therefore her "stay put" placement for the coming academic year will by necessity involve a change in the physical location. Neither a change in physical location nor a move from a private to a public school setting "constitute a fundamental alteration of [] placement." Henry v. School Administrative Unit No. 29, 70 F. Supp.2d 52, 60 (N.H. 1999). A determination of a fundamental change in placement in this case is dependent on the Plaintiff factually

demonstrating that the FOCUS PROGRAM proposed by Ludlow is "a change in educational placement." Such a determination requires the following factual inquiries:

> (1) whether the educational program set out in the proposed IEP is a revision of the prior IEP; (2) whether [Plaintiff] will be educated with non-disabled children to the same extent under the proposed IEP; (3) whether [Plaintiff] will have the same opportunities to engage in non-academic and extra-curricular activities; and (4) whether the proposed placement represents a significant change in position along the continuum from the most restrictive to the least restrictive placement options. Id. at 60.

The facts necessary to make these determinations are set forth in the Affidavit of Dr. Kane and the I.E.P. s attached as Exhibits C and D. To the extent that factual disputes continue to exist the factual record is most properly developed by the BSEA, the administrative body formed by the Massachusetts Legislature with the relevant expertise to decide such matters. A pure matter of law is not presented by the Plaintiff and, therefore, this exception to exhaustion is unavailable.

**(2) Futility**

Plaintiff has not demonstrated that exhausting its administrative remedies would be futile. Assuming that the Plaintiff would request an administrative hearing before the BSEA, a hearing on the "stay put" determination could be scheduled on an expedited basis within 10 days of the request, if deemed by the Bureau to be an emergency. Plaintiff has alleged no facts demonstrating pursuit of that remedy, which could potentially resolve the issue prior to the beginning of the school year.

192298-1

Further, Plaintiff contends that the BSEA's lack of injunctive power renders the process futile. It is undisputed that Ludlow would be bound by an order of the BSEA and would comply with the Bureau's determination as to Plaintiff's "stay put" placement.

Plaintiff's failure to fully pursue administrative remedies demonstrates forum shopping, not the avoidance of an exercise in futility. Such litigious strategies are contrary to the policy considerations underpinning the doctrine of exhaustion of remedies.

### (3) Severe harm to the litigant.

Plaintiff presents no evidence to support a finding of severe or irreparable harm if the federal court does not take immediate action. As demonstrated in the analysis of futility, timely administrative procedures have been and are available to the Plaintiff to resolve her "stay put" question. The BSEA will make the same factual inquiries that the Plaintiff asks this court to make. Resolution of the "stay put" question, whether made by this Court or the BSEA will require the same factual inquiries and will have the same effect – to determine where Plaintiff will be enrolled this fall. Given the equality of effect the two avenues of resolution afford, Plaintiff fails to show any harm in relying on administrative procedures. Policy considerations in this case – agency expertise, judicial economy etc... - are in full favor of administrative resolution of the issue.

II.   Ludlow's Focus Program Is The Current Educational Placement For The Purposes Of "Stay-Put" Pending The Outcome Of An Administrative Hearing.

Ludlow does not dispute its obligation to provide Larissa with a "comparable" special education program which conforms with her last agreed-upon I.E.P. pending the outcome of any evidentiary hearing before the Bureau of Special Education Appeals. The plaintiff's allegation that the White Oak School is the "current educational placement" for the purposes of "stay-put" is, however, unsupported by the plaintiff's pleadings in this case and relevant case law.

Other than conclusory misrepresentations about the Focus Program, the plaintiff has not identified any specific fundamental change in, or the elimination of, a basic element of Larissa's program by virtue of her proposed placement in the Focus Program.

The Plaintiff relies on the distinguishable case of <u>Jarczynski v. St. Mary's County Public Schools</u>, 29 IDLR 49 (D.C., M.D., 1998). In <u>Jarczynski</u>, a learning disabled student attended a private school which ended at the 8th grade. The district proposed placing the student at a public high school for 9th grade <u>in a combination of regular and special education classes</u>. The court in <u>Jarczynski</u> allowed the parents' request for injunctive relief, reasoning that the proposed public school placement constituted a substantial change from the current placement. <u>Id.</u> Clearly, if Ludlow were proposing to enroll Larissa in a combination of regular and special education classes in the general population at Ludlow High School, injunctive relief would be appropriate, but such is not the case.

## III.   Traditional Preliminary Injunction Analysis

It is the defendant's position that the Court need not engage in a traditional analysis of the elements for a preliminary injunction at this time. The defendant discusses the traditional components of a preliminary injunction, however, with confidence that the Court will find the plaintiff's request for injunctive relief to be premature and inappropriate.

### A.   Preliminary Injunction Standards

Over time, the First Circuit has developed a quadripartite test for determining whether litigants are entitled to preliminary injunctive relief. See <u>Narragansett Indian Tribe</u>, 934 F. 2d at 5. The party seeking preliminary injunction must show: (1) that she has a substantially likelihood of success on the merits; (2) that she faces a significant potential for irreparable injury in the absence of immediate relief, (3) that the ebb and flow of

possible hardships are in favorable juxtaposition (i.e. that the issuance of an injunction will not impose more of a burden on the nonmovant that its absence will impose on the movant; and (4) that the granting of prompt injunctive relief will promote (or at least not denigrate) the public interest. McGuire et al v. Rielly et al, 260 F. 3d 36, 42 (1st Cir. 2001).

A preliminary injunction is a drastic remedy that a Court should not grant unless the movant by a clear showing carries its burden of persuasion. Charles Wright and Arthur Miller, 11 Fed. Prac. & Pro., 2948 at 129-130 (1995). With these analytical principles in mind, the factual allegations and legal arguments presented by the plaintiff clearly do not meet the requirements for a preliminary injunction.

B.   The Plaintiff Is Not Likely To Succeed On The Merits.

The plaintiff must satisfy all prongs of the four-part test to be entitled to injunctive relief. The "sine qua non" of that formulation is whether the plaintiff is likely to succeed on the merits. Weaver, et al v. Henderson, et al, 984 F. 2d 11, 12 (1st Cir. 1993). The "likelihood of success cannot be woven from the gossamer threads of speculation and surmise". Weaver, et al v. Henderson, et al, 984 F. 2d 11, 12 (1st Cir. 1993).

The plaintiff is unlikely to succeed on the merits of her complaint. She clearly has failed to avail herself of the administrative remedies available to address special education disputes before the Bureau of Special Education Appeals. Proceeding with an administrative hearing before the BSEA would not be futile since the Bureau regularly addresses issues of "stay-put", renders expedited decisions regarding interim placements and makes factual findings relative to the appropriateness of special education programs. See Exhibit A. BSEA hearing officers have a vast amount of experience in evaluating

special education programs and could readily address the "stay-put" issue on an expedited basis if necessary.

Additionally, the plaintiff's claim fails since "stay-put" in this case would be the Focus Program proposed by the school district. The plaintiff has not presented any evidence to support her allegation that enrollment in the Focus Program would result in a fundamental change in the last agreed-upon programming summarized in the Blake I.E.P. attached as Exhibit D. To the contrary, a review of Exhibits C and D and the Affidavit of Dr. Theresa Kane support the comparable services to be provided to Larissa through the Focus Program. Other than mere conclusory statements, the plaintiff has offered no evidence regarding programming at the White Oak School.

C.   There is no risk of irreparable harm to the plaintiff.

A preliminary injunction requires not only a substantial likelihood of success on the merits but also showing that denial would "subject the moving party to substantial risk of irreparable harm." Dos-Simons of Warrick Inc., 102 F. 3d 12, 18 (1st Cir. 1996). There is no risk of irreparable harm if the injunction is not granted because the plaintiff has yet to exhaust all administrative remedies. The plaintiff is free to request an expedited hearing and interim ruling regarding "stay-put" prior to the start of the school year on September 2, 2003.

Moreover, the parent is free to unilaterally enroll Larissa at the White Oak School and seek retroactive reimbursement for any costs and expenses associated with that enrollment via a hearing before the BSEA. In the event that a hearing officer ultimately ruled against the school district, the plaintiff would be made whole through a retroactive

reimbursement. The plaintiff has not submitted any evidence to indicate that the cost of such a temporary unilateral placement would be prohibitive.

Further, the plaintiff cannot be irreparably harmed by a denial of the motion since all of her last agreed-upon goals and objectives and services in her Blake I.E.P. can be met through the Focus Program pending the outcome of a hearing before the BSEA.

D.   <u>The balancing of relative equities weighs in favor of the defendant.</u>

State and federal special education law favors development of special education programming in the least restrictive environment which in this case is the public school. Ludlow has expended considerable monies in developing the Focus Program and hiring numerous qualified professionals, including former Blake employee Mary Ellen Moreau to consult to Larissa's program. The district should not have to expend additional funds for duplicate programming in a private school setting.

There can be no conceivable harm to the plaintiff in attending a program designed to meet her individual needs pending the outcome of an administrative hearing. In the event that the BSEA hearing officer agrees with the district's position regarding the appropriateness of Ludlow's program, Larissa will have already been acclimated to the Focus Program, thereby limiting any change or disruption in her life.

E.   <u>Denial of the preliminary injunction will have no ill effects on public interest.</u>

The public interest will be served by denial of the request for the injunction given the intent of the legislature in enacting the Individuals with Disabilities Education Act. The Act clearly encourages education of students in the least restrictive environment which, by necessity, requires the school districts to develop their own language-based programs such as that developed by Ludlow. By law, Larissa has a right to be educated with other

192298-1                                             18